IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-02394-PAB

DEANNA L. HANSON,

     Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

_____

## ORDER

_____

     This matter is before the Court on the Complaint [Docket No. 1] filed by plaintiff Deanna Hanson on August 29, 2024. Plaintiff seeks review of the final decision of defendant (the "Commissioner") denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33. Docket No. 1 at 1, ¶ 2. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]

## I. BACKGROUND

     On February 22, 2022, Ms. Hanson applied for disability insurance benefits under Title II of the Act. R. at 21.[2] Ms. Hanson's application was initially denied on November 8, 2022 and denied on reconsideration on April 21, 2023. *Id.* Ms. Hanson requested a

_____

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

[2] The record begins with an index. Docket No. 7 at 1-4. The record is page-stamped twice; one number includes the pages of the index, while the other does not. *See*, *e.g.*, *id.* at 5. The same page therefore has two page numbers. The Court will cite the page numbers that include the index pages.

hearing before an administrative law judge ("ALJ").  *Id*.  On December 7, 2023, the ALJ

held a hearing.  *Id*.  On March 13, 2024, the ALJ issued a decision denying Ms.

Hanson's application.  R. at 28.

To qualify for disability benefits, a claimant must have "disability insured status."

20 C.F.R. § 404.130(a).  To achieve this status, a claimant must be both fully insured

and insured for disability.  *See* 42 U.S.C. §§ 414(a), 423(c)(1).  The ALJ found that Ms.

Hanson's alleged onset date for her disability was December 10, 2019 and that the last

time she met the insured status requirements of the Act was on December 31, 2019.  R.

at 23.  The ALJ determined that, during this twenty-one-day period, Ms. Hanson had the

severe impairments of right parietal parafalcine meningioma with migraines and

occipital headaches.  R. at 24.  The ALJ also found that Ms. Hanson had the non-

severe impairments of pulsatile tinnitus of the right ear and bilateral hearing loss.  *Id*.

The ALJ determined that Ms. Hanson did not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments

in 20 C.F.R. Part 404, Subpart P, App. 1.  *Id*.; *see also* 20 C.F.R. §§ 404.1520(d),

404.1525, 404.1526.  After a review of the record, the ALJ found that Ms. Hanson had a

residual functional capacity ("RFC") to perform a limited range of light work.  R. at 24;

s*ee also* 20 C.F.R. §§ 404.1520(e), 404.1567(b).  Specifically, the ALJ concluded that

Ms. Hanson could "occasionally lift 20 pounds and frequently lift 10 pounds; stand, walk,

and sit each for six hours in an eight-hour workday given normal work breaks; and

frequently perform postural activities including stooping, climbing of ramps and stairs,

kneeling, crouching, and crawling."  R. at 24.  Based on this RFC, the ALJ found that

Ms. Hanson could have performed jobs that existed in the national economy between

December 10, 2019 and December 31, 2019.  *Id.* at 27.  Ultimately, the ALJ ruled Ms. Hanson was not under a disability during the relevant period.  R. at 28.

Ms. Hanson requested review of the ALJ's decision by the Appeals Council, which was denied on July 17, 2025.  R. at 5.  Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II.  STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision.  *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019).  "Substantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citation and quotation omitted).  "The threshold for such evidentiary sufficiency is not high."  *Id.*  However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005)).  Nevertheless, "if the ALJ

failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(1)–(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. §§ 404.1520(b)–(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts."  *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV.  DISCUSSION

Ms. Hanson raises two objections: (1) the ALJ's RFC finding is inconsistent with the record, and (2) the ALJ failed to adequately explain the basis for her RFC determination.  Docket No. 8 at 9-12.  The Court addresses each objection in turn.

### A.  RFC Determination

Ms. Hanson argues that the ALJ's RFC determination fails to account for the evidence in the record of the debilitating nature of Ms. Hanson's headaches.  *Id.* at 10. Specifically, Ms. Hanson argues that the ALJ failed to consider the fact that Ms. Hanson's headaches are so intense that she is confined to her bed for a period of days each month.  *Id.* (the record "contains consistent reports of Plaintiff's need to lie down in a dark, quiet room for the duration of each episode.  Notably, Plaintiff reported that this is the primary impediment to her employment, as she would regularly have to miss several days of work each month while dealing with a headache." (internal citations omitted)).  Moreover, Ms. Hanson argues that the ALJ's RFC finding fails to account for

5

the fact that Ms. Hanson's medical conditions cause "cognitive deficits, personality changes, and depression." *Id.* Therefore, Ms. Hanson appears to argue that the ALJ's RFC determination is not supported by substantial evidence because it is "overwhelmed by other evidence in the record." *Musgrave*, 966 F.2d at 1374.

To support her argument that the ALJ's RFC determination cannot be squared with the record, Ms. Hanson relies on evidence of her condition from June 2021 through August 2023. *Id.* at 4-7. First, Ms. Hanson points to medical records from June of 2021 that indicate that Ms. Hanson's gait was unstable and that she reported feelings of hopelessness, hypervigilance, and agitation. *Id.* at 4 (citing R. at 348-74). Ms. Hanson also relies on a function report that she completed for the Commissioner on July 25, 2022 which "described significant problems with memory, understanding, and learning." *Id.* (citing R. at 221-24). As part of the headache questionnaire that Ms. Hanson completed the same day, she reported that she was experiencing headaches one to two times a month that confined her to her bed with the lights off. *Id.* at 5 (citing R. at 254). Ms. Hanson's husband also completed a function report regarding Ms. Hanson. R. at 231. Ms. Hanson argues that her husband's report indicates that she requires help with daily activities and that she is frequently unable to leave the house. Docket No. 8 at 5-6 (citing R. at 231-38). Ms. Hanson further relies on her headache log from January through August of 2023, which demonstrates that Ms. Hanson "continued to experience headaches with mental fogginess, eye pain, blurred vision, muscle aches, pressure, weakness, fatigue, dizziness, and nausea, lasting anywhere from a day to a week, but on average for two to four days." *Id.* at 7 (citing R. at 306-07).

The Court finds that the ALJ's analysis demonstrates that the ALJ considered the evidence of Ms. Hanson's condition after 2020, but found that the evidence had minimal evidentiary value in determining whether she was disabled at the end of 2019. The ALJ followed a two-step process for determining Ms. Hanson's RFC. First, the ALJ considered "whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques – that could reasonably be expected to produce the claimant's pain or other symptoms." R. at 24-25. Second, the ALJ evaluated "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." *Id.* at 25. Although the ALJ concluded that Ms. Hanson's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," the ALJ also found that Ms. Hanson's statements regarding the intensity of her symptoms were inconsistent with the medical evidence in the record. *Id.* The ALJ noted that most of Ms. Hanson's testimony at the hearing, as well as much of her and her husband's subjective reporting on the impacts of her headaches, was based on her present condition, not on her condition in December 2019. *See*, *e.g.*, R at 25-26 ("most of the claimant's hearing testimony concerned her functioning at present" and "while the undersigned notes that the record contains a third party function report authored by the claimant's husband, Leif K. Hanson, this is unpersuasive for purposes of finding a more limited residual functional capacity than that found herein given that said third party function report dates from July 2022 and describes the claimant's functioning in the present tense").

The ALJ determined that Ms. Hanson's testimony that her medical conditions impacted her mental health to the point that Ms. Hanson became suicidal was not credible.  R. at 25.  In particular, the ALJ noted that Ms. Hanson underwent a physical examination on December 18, 2019.  *Id.*  The ALJ found that the records from the exam showed that Ms. Hanson was not in distress and had a normal mood and affect, although she was tearful at times.  *Id.*  Results from a February 13, 2020 examination also indicated that Ms. Hanson had a normal mood and affect.  R. at 26.  The ALJ concluded that this was inconsistent with Ms. Hanson's testimony that she was "extremely suicidal" at that time.  R. at 25.

Moreover, the ALJ concluded that medical records from December 2019 indicated that Ms. Hanson had "5/5 strength in her upper and lower extremities," and that the results of a February 13, 2020 medical exam showed "full extraocular movements, no muscle pain or tenderness, [and] normal muscle bulk and ton."  R. at 25-26.  The ALJ therefore concluded that "the more recent medical evidence of record, such as the claimant having slightly unstable gait with difficulty performing tandem walking in May 2020, do not relate back to the period at issue in this case, nor do subsequent diagnoses of mental impairments of depression and anxiety."  R. at 26.  Instead, the ALJ concluded that "objective findings . . . , such as the claimant having 5/5 strength throughout the upper and lower extremities on December 18, 2019 and normal muscle bulk and tone on February 13, 2020, support a finding of functioning at least consistent with light work during the course of the period at issue."  *Id.*  The ALJ determined that a finding of "residual functional capacity for only light work with postural limitations . . . account[s] for the claimant's subjective complaints."  *Id.*  However, the

8

ALJ concluded that a finding of greater limitations was not warranted, given that Ms. Hanson reported that she was not experiencing headaches during an otolaryngology appointment on December 2, 2019 and that medical records from March 2020 indicated that Ms. Hanson's headaches had improved with medications. *Id.*

The Court finds that the ALJ's determination that Ms. Hanson had an RFC of performing light work with postural limitations is supported by substantial evidence that Ms. Hanson's symptoms from her headaches were not as severe as she claimed during December 2019. The ALJ concluded that evidence of the increased severity of Ms. Hanson's headaches in 2020 did not relate back to her condition in 2019, given that medical evidence closer in time indicated that her headaches were not as intense as they were at the time of the hearing. The Court finds that the ALJ did not err by not considering the limitations Ms. Hanson presently has on her ability to work, given that the ALJ found that there was insufficient evidence to support a finding that those limitations also existed in 2019. *See* Docket No. 8 at 10 ("Notably, Plaintiff reported that this is the primary impediment to her employment, as she would regularly have to miss several days of work each month while dealing with a headache. Yet, the ALJ's decision is void of any discussion of Plaintiff's need for absences, and it is not addressed in the RFC either." (internal citation omitted)). The Court declines to reweigh Ms. Hanson's evidence regarding her headaches from 2020 through 2023 in order to conclude that the ALJ's RFC determination is not supported by substantial evidence. *Flaherty*, 515 F.3d at 1070. Therefore, the Court will deny Ms. Hanson's appeal to the extent it is based on the ALJ's evaluation of the evidence in the record of Ms. Hanson's disability in 2019.

9

### B. **RFC Explanation**

Ms. Hanson argues that the ALJ failed to adequately explain her RFC determination.  Docket No. 8 at 11.  She maintains that there is no apparent relationship between the ALJ's determination that Ms. Hanson can perform light work and her severe impairment of right parietal parafalcine meningioma with migraines.  *Id.*  Ms. Hanson asserts that the ALJ was required to "build a logical bridge" between the evidence in the record and her conclusions.  *Id.* (quoting *Correa v. Berryhill*, 2018 WL 1472480, at *8 (D.N.M. Mar. 26, 2018)).  She contends that the ALJ failed to do so in this case.  *Id.*

The Court disagrees.  The ALJ explained that medical records from December 18, 2019 and February 13, 2020 demonstrate that Ms. Hanson had "5/5 strength" and had "normal muscle bulk and tone."  R. at 26.  The ALJ determined that this evidence supports "a finding of functioning at least consistent with light work during the course of the period at issue."  *Id.*  The ALJ acknowledged that the Commissioner's experts had concluded that Ms. Hanson had less severe functional limitations, but the ALJ determined that an RFC of light work would "account for the claimant's subjective complaints" and medical evidence that Ms. Hanson experienced "a new kind of headache that was described as being occipital in nature."  *Id.*  The ALJ stated that she could not conclude that Ms. Hanson had less functional capacity because a contemporaneous physical exam showed "normal general appearance with no apparent distress, normal examination of the claimant's head and neck including that her sinuses and neck were non-tender, intact extraocular muscle movement with no nystagmus bilaterally and normal gaze alignment, normal neurological system functioning, and

normal mood and affect." *Id.* Finally, the ALJ identified the evidence in the record that contradicted Ms. Hanson's assertion that she suffered from constant headaches at that time, including Ms. Hanson reporting to her otolaryngologist that she was not experiencing recurrent migraines. *Id.* Thus, the ALJ explained why an RFC of performing light work was consistent with the record while citing specific support from the medical evidence. The ALJ discussed why the RFC was neither greater than nor less than necessary to account for Ms. Hanson's medical conditions. Therefore, the Court rejects Ms. Hanson's argument that the ALJ failed to adequately explain her RFC determination, such that the ALJ's decision is incapable of judicial review. Docket No. 8 at 11 ("the ALJ's decision must be sufficiently articulated so that it is capable of meaningful review" (citing *Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished))). The Court will affirm the ALJ's RFC determination.[3]

---

[3] None of Ms. Hanson's cited cases require a different result. In *Spicer*, 64 F. App'x at 177, the ALJ did not consider the limitations caused by the claimant's osteoarthritis. Although Ms. Hanson argues that the ALJ failed to consider certain limitations caused by her headaches, such as her need to take days off from work, Docket No. 8 at 10, the ALJ addressed the issue by concluding that the record did not support a finding that Ms. Hanson had the limitations during the relevant period. R. at 26. In *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003) (unpublished), the ALJ failed to make a finding as to the claimant's "ability to sit, stand, walk, push, or pull." Moreover, the ALJ failed to cite specific medical facts and nonmedical evidence in the record that supported his conclusions. *Id.* at 784-85. Here, Ms. Hanson does not argue that the ALJ made any similar error. *See* Docket No. 8. In *Guice v. Comm'r, SSA*, 785 F. App'x 565, 568 (10th Cir. 2019) (unpublished), the ALJ did not adequately explain why she was rejecting the medical opinions of the claimant's treating physicians. Ms. Hanson makes no argument that the ALJ failed to consider relevant medical opinions or that the ALJ did not explain why she was not accepting such opinions. Rather, Ms. Hanson acknowledges that the experts in this case found that there "was insufficient evidence in the record to assess Plaintiff's functioning during the period of time before her date last insured." Docket No. 8 at 6. The Court has found that the ALJ explained what evidence she relied on and why she rejected Ms. Hanson's testimony regarding

### C. **Harmless Error**

Even if the ALJ's RFC discussion fails to adequately explain how Ms. Hanson's severe impairment of right parietal parafalcine meningioma with migraines limits Ms. Hanson to performing light work, the Court finds that Ms. Hanson has failed to demonstrate that she was prejudiced.  The ALJ's only explanation as to why Ms. Hanson had any limitation on the work she could perform was to "account for the claimant's subjective complaints."  R. at 26.  The ALJ then cited contemporaneous medical evidence from the record indicating that Ms. Hanson was not experiencing recurrent migraines, had "unremarkable" physical examination results, and had recently acquired a bachelor's degree.  R. at 25.  Ms. Hanson points to evidence in the record that her headaches became more severe in 2020.  Docket No. 8 at 4-7.  However, the ALJ rejected this evidence as irrelevant for purposes of determining whether Ms. Hanson was under a disability in 2019.  R. at 26.  Therefore, the ALJ adequately explained why it rejected Ms. Hanson's claim that she lacked the capacity to perform light work.  However, the ALJ's analysis suggests that Ms. Hanson could perform more strenuous work.  As such, the ALJ's opinion indicates that Ms. Hanson was less, not more, disabled than the ALJ's RFC finding would suggest.  Accordingly, Ms. Hanson has failed to identify an error in the ALJ's opinion that demonstrates that the ALJ's ultimate disability determination was incorrect.  Without a showing of prejudice by the plaintiff, the Court will not reverse the decision of the ALJ under these circumstances. *Shinseki v. Sanders*, 556 U.S. 396, 406–08 (2009) (preserving a reviewing court's ability

---

her disability in 2019.  R. at 25-26.  These cases therefore provide no support for the proposition that the ALJ committed reversible error in this case.

to conduct an independent harmless error analysis); *Adkins v. Colvin*, 645 F. App'x 807, 809 (10th Cir. 2016) (unpublished) (holding that the party challenging the agency's action has the burden of establishing prejudicial error).

## V. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that claimant is not disabled is **AFFIRMED**.  It is further

**ORDERED** that this case is closed.


DATED August 21, 2025.


BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge